UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAROLD RUSSELL TAUB,<br>Defendant. | Criminal Case No. _____<br>CR 19-015 WES<br><br>In violation of 18 U.S.C. § 1343;<br>52 U.S.C. §§ 30104, 30109 |

## INFORMATION

The United States Attorney charges that:

### Introduction

At all times material to this Information:

1. Defendant HAROLD RUSSELL TAUB, was a resident of Cranston, Rhode Island. In 2016, TAUB ran unsuccessfully to represent Rhode Island in the United States House of Representatives.

### Federal Campaign Finance Law

2. The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Section 30101, *et seq.* ("Election Act") imposed financial limits on the election of candidates for federal office, including the offices of Member of the United States House of Representatives and United States Senator, and provided for public disclosure of the financing of federal election campaigns.

3. The Federal Election Commission ("FEC") was an agency and department of the United States Government entrusted with the responsibility of administering and enforcing the Election Act. In order to deter abuses and instill public confidence in the election process, the FEC was responsible for receiving and making available to the public specific information about the amounts and sources of political contributions to federal candidates and their political committees.

4. Under the Election Act, a "political committee" is "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year." Each political committee is required to file, within 10 days of becoming such a committee, a "statement of organization." This statement is required to contain information such as the name, address, and type of committee; the name and address of the custodian of books and accounts and the treasurer of the committee; and a list of all banks used by the committee.

5. In addition to the statement of organization, the Election Act required political committees to file with the FEC periodic reports of receipts and disbursements identifying all contributions received by or on behalf of such a political committee, the identity of each person whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, the total amount of all disbursements, and the total amount of disbursements in specific categories, such as contributions made to other political committees and independent expenditures.

6. Two types of political committees required to register with and report to the FEC were "non-connected" and "independent expenditure-only" political committees.

7. Non-connected political committees, often referred to as "political action committees" or "PACs," were permitted to accept contributions of up to $5,000 per year from each individual contributor or other political committee and were permitted to contribute directly to the campaign committee of a federal candidate.

8. Independent expenditure-only political committees, often referred to as "Super PACs," were non-connected political committees that were permitted to accept contributions of an unlimited amount from individuals, corporations, labor unions, and other political committees for the purpose of financing expenditures and other political activity not connected with a specific federal candidate. However, Super PACs were not permitted to contribute directly to the campaign committee of a federal candidate or to a political committee that donates directly to the campaign committees of federal candidates.

### Count One – Wire Fraud
### 18 U.S.C. § 1343

9. Between in or about December 2016 and in or about November 2018, in the District of Rhode Island and elsewhere, defendant,

**HAROLD RUSSELL TAUB,**

did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money by means of material false and fraudulent pretenses, representations, and promises; specifically, TAUB solicited contributions from the general public for multiple

3

political committees, including Keeping America in Republican Control and Keeping Ohio in Republican Control, based on intentional misrepresentations, including but not limited to, KAIRC and KOIRC were Super PACs, "100%" of the money contributed by donors would be used to support candidates for federal office, and all of the people who worked for the committees were volunteers, when in reality (1) neither KAIRC nor KOIRC were registered with the FEC and neither operated within Super PAC regulations, (2) TAUB used funds contributed to KAIRC and KOIRC for personal expenses, and (3) TAUB was the only person working for KAIRC or KOIRC and he paid himself substantial amounts of money.

10.     On or about June 13, 2018, in the District of Rhode Island and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money by means of material false and fraudulent pretenses, representations, and promises, knowingly and intentionally transmitted and caused to be transmitted the following writings, signs, signals, pictures, and sounds, by means of wire communication in interstate commerce: an email from Rhode Island to Ohio.

## The Execution of the Scheme

11.     In or about December 2016, TAUB created an organization called Keeping America in Republican Control ("KAIRC"), which he represented to be a legitimate political committee, organized in accordance with federal law to support Republican candidates at the state and federal level.

4

12. In or about March 2018, TAUB created an organization called Keeping Ohio in Republican Control ("KOIRC"), which he represented to be a legitimate political committee, organized in accordance with federal law to support Republican candidates in Ohio.

13. Neither KAIRC nor KOIRC were registered with or made reports of receipts and disbursements to the FEC, as required by the Election Act.

14. TAUB created a website for KAIRC, www.kaircpac.com, which, when active, had a link on the main page titled "Federal PAC." Clicking on that link led to a page that described KAIRC:

> Keeping America in Republican Control PAC endorses and raises money for candidates who stay true to the fundamental principles of limited government and economic freedom. We aim to keep a close relationship with individuals, parties, candidates, and potential candidates who have political experience or want to become active.

15. The website also had a page titled "State PAC." That page contained a statement that KAIRC endeavors "To assist in the election of Republican Gubernatorial candidates and the relection [sic] of incumbment [sic] Republican Governors."

16. The KAIRC website allowed prospective donors to submit donations from $25 to over $1,000 through a donation portal operated by an online fundraising platform. The donation page on the website contained the following statement:

> Contributions or gifts to Keeping America in Republican Control are not tax deductible as charitable contributions for federal income tax purposes. Corporate contributions and contributions from foreign nationals are prohibited by law. It is illegal for any person to reimburse another for making a contribution to Keeping America In Republican Control. Federal law requires us to use our best efforts to obtain and

5

report the name, mailing address, occupation and name of employer for each individual who contribute.

17. In addition to the KAIRC website, TAUB sent solicitations for donations to individual donors through the U.S. mail, email, and social media. In these solicitations, TAUB falsely represented that everyone who worked for KAIRC and KOIRC were volunteers and that "100%" of donations to KAIRC and KOIRC would be used to further the candidates they support. In fact, TAUB was the only person working for KAIRC or KOIRC, he paid himself substantial amounts of money, and used the funds contributed to KAIRC and KOIRC for personal expenses.

18. In the solicitations, TAUB used the name of a former Ambassador and high-level military officer, Person A, to further his fraudulent representations and induce donors to give money, without the knowledge or permission of Person A. The use of Person A's name gave credibility to TAUB's solicitations and induced donors to give money to KAIRC. In or about July 2018, Person A, through legal counsel, sent a cease and desist notification to TAUB, instructing TAUB to stop using Person A's name in his solicitations, as Person A had not authorized such use. TAUB promptly acknowledged the notification and agreed to cease using Person A's name in solicitations. However TAUB continued to use Person A's name in solicitations through in or about November 2018.

19. TAUB represented to some donors that KAIRC and KOIRC were Super PACs and he treated both KAIRC and KOIRC as Super PACs, in that he accepted donations greater than the $5,000 limit on donations to PACs imposed by the Election Act. However, TAUB also made more than $215,000 in donations directly from KAIRC

and KOIRC to the campaign committees of federal candidates, which is prohibited for a Super PAC to do under the Election Act.

20. TAUB received a total of approximately $1,630,439 in contributions to KAIRC and KOIRC, with more than 160 donors contributing a total of approximately $1,126,114 to KAIRC and six donors contributing a total of approximately $504,325 to KOIRC.

21. The two largest donors to KAIRC and KOIRC were Donor A and Donor B, a married couple. Starting in or about May 2017, TAUB sent multiple solicitations to Donor A. In his solicitations, TAUB falsely represented to Donor A that KAIRC and KOIRC were Super PACs, all of the staff were volunteers, that "100%" of donations were used to support candidates, and that Person A was involved with KAIRC and KOIRC. One such solicitation was sent by TAUB on or about June 13, 2018 by email from Rhode Island to Donor A in Ohio. In the email, TAUB sought an additional contribution and stated: "no one gets paid in our groups because we are volunteers. 100 percent goes back in support." As a result of this and other false representations by TAUB, Donor A and Donor B contributed a total of approximately $1,275,000 to KAIRC and KOIRC.

22. TAUB converted more than $1 million of the over $1.6 million donated to KAIRC and KOIRC to personal use, including transferring more than $715,000 directly into his personal checking and savings accounts; withdrawing nearly $100,000 in cash; and using more than $217,000 to directly pay for personal expenses, including tens of

thousands of dollars on international and domestic air travel, hotels, restaurants, clothing, cigars, adult entertainment, and escort services.

All in violation of 18 U.S.C. § 1343.

## Count Two – Willful Violation of the Election Act
## 52 U.S.C. §§ 30104(a)(4), 30109(d)(1)(A)

23.     The allegations set forth in paragraphs one (1) through twenty-two (22) are re-alleged and incorporated by reference as if fully set forth herein.

24.     Between in or about January 1, 2018 and on or about December 31, 2018 in the District of Rhode Island and elsewhere, defendant,

### HAROLD RUSSELL TAUB,

knowingly and willfully violated the Election Act by failing to make required reports to the FEC of receipts and disbursements relating to two political committees, that is the organization called Keeping America in Republican Control and the organization called Keeping Ohio in Republican Control, aggregating $25,000 and more in calendar year 2018.

All in violation of 52 U.S.C. §§ 30104(a)(4) and 30109(d)(1)(A).

## CRIMINAL FORFEITURE ALLEGATIONS

1.  The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.  Upon conviction of the offense in violation of Title 18, United States Code, Section 1343 set forth in Count One of this Information, the defendant, HAROLD RUSSELL TAUB, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to, the following:

| Bank Account Number | Account Holder Name | Balance |
| --- | --- | --- |
| XXXX-436-9 | Harold Taub | $7,760.99 |
| XXXX-093-2 | Harold Taub DBA Harold Taub Keeping Ohio in Republican Control (KOIRC) | $1,320.34 |
| XXXX-771-0 | Harold Taub DBA Taub Victory Fund | $67.67 |
| XX-XXX3428 | Harold Taub | $2,023.54 |
| XXXX-781-9 | Harold Taub DBA Putting New England First (PNEF) | $1,011.00 |
| XXXX-814-3 | Harold Taub DBA Tested and Trusted | $1,259.40 |

3.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).


ANNALOU TIROL
Acting Chief, Public Integrity Section
Criminal Division, U.S. Department of Justice

By: _____
PETER M. NOTHSTEIN
Trial Attorney, Public Integrity Section


DATE: 2/7/2019